**2023 IL 128398**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

———————————

(Docket No. 128398)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. JESSICA R. LIGHTHART, Appellant.

*Opinion filed October 19, 2023.*

JUSTICE OVERSTREET delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Cunningham, Rochford, and O'Brien concurred in the judgment and opinion.

Justice Holder White took no part in the decision.

**OPINION**

¶ 1 Petitioner, Jessica R. Lighthart, appeals the judgments of the circuit and appellate courts, which found that her petition, brought pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2006)), is untimely, resulting in its dismissal at the second stage of proceedings. In this appeal, the court

must determine whether the filing of an ineffective notice of appeal from a negotiated plea of guilty, which is dismissed for lack of appellate jurisdiction due to failure to follow the procedural requirements of Illinois Supreme Court Rule 604(d) (eff. July 1, 2017), triggers a six-month limitations period for bringing a postconviction petition or whether, in such a case, the petitioner has three years from the date of her conviction to file such a petition. See 725 ILCS 5/122-1(c) (West 2022).[1] For the following reasons, we find that the six-month limitation period applies. However, we find that, under the circumstances presented here, the petitioner could not have been culpably negligent in the untimely filing of her petition. Thus, we reverse the judgments of the courts below and remand to the circuit court with directions that petitioner be permitted to amend the petition to reflect our findings regarding her lack of culpable negligence and for further proceedings consistent with this opinion, to be conducted without further delay.

¶ 2                              I. BACKGROUND

¶ 3                    A. Plea Proceedings in the Circuit Court

¶ 4        Petitioner was charged with multiple counts of first degree murder based on the shooting death of the victim by her codefendant, which occurred during an armed robbery. On June 15, 2004, she entered a partially negotiated plea of guilty to one count in the indictment, in exchange for the State's dismissal of all other charges and a sentencing cap of 35 years in the Department of Corrections, with 3 years of mandatory supervisory release. The factual basis for the plea was stated as follows.

¶ 5        Petitioner, who was 23 years old at the time of her plea, had dated the victim, as well as her codefendant, Markus Buchanan, "on and off." The victim was known to have access to large amounts of money. Petitioner drove the victim to a residence, knowing that Buchanan was there intending to rob the victim. Petitioner asked the victim to carry a laundry basket into the residence, where Buchanan was armed with a handgun. Buchanan beat the victim while demanding money and eventually shot the victim to death. At some point in time following the shooting,

---

[1] While section 122-1 of the Act (725 ILCS 5/122-1 (West 2022)) has undergone amendment since the time the petition at issue in the case was filed in 2006, the language of subsection (c) has not changed in that timeframe, and except when outlining the history of subsection (c) in our analysis, we cite the current version in the remainder of this opinion.

Petitioner either injected the victim with a solution that contained Drano or attempted to do so. Petitioner then participated, along with Buchanan, with a woman who lived at the residence, and with the woman's friend who was visiting at the time, in cleaning the scene to remove evidence and disposing of the body, by setting it on fire inside the victim's Jeep in a rural field.

¶ 6                                  B. Sentencing

¶ 7      During the sentencing hearing on August 17, 2004, petitioner presented three witnesses who testified that Buchanan had abused, stalked, and isolated petitioner over the two years preceding the crime and introduced a photo into evidence of petitioner depicting substantial bruising of her face following one of the incidents. The woman who owned the residence testified that Buchanan had threatened to kill the woman and her friend if they did not participate in cleaning the scene and disposing of the body. After hearing this evidence, along with other factors in aggravation and mitigation, the circuit court sentenced petitioner to 35 years, which was the cap on sentencing required by the terms of the plea agreement.

¶ 8            C. Plea Counsel's Postjudgment Motion to Reduce Sentence

¶ 9      Immediately following the sentencing hearing, petitioner, through plea counsel, filed a motion to reconsider the sentence, arguing it was excessive, which the circuit court denied on October 1, 2004.

¶ 10     Although counsel assured the circuit court that petitioner understood "her right to appeal and the time limits on filing those choices," at the time the circuit court denied the motion to reconsider sentence, petitioner had already lost her right to directly appeal from both the conviction and the sentence because counsel did not file a motion to withdraw her guilty plea within 30 days of the imposition of sentence. See Ill. S. Ct. R. 604(d) (eff. Nov. 1, 2000) (no appeal from a plea of guilty shall be taken unless a motion to withdraw guilty plea is filed within 30 days of sentence)

¶ 11            D. Petitioner's Untimely *Pro Se* Motion to Withdraw Guilty Plea

¶ 12        On October 14, 2004, petitioner filed a *pro se* motion to withdraw her guilty plea. In her motion, she alleged she received ineffective assistance of counsel who refused to cooperate with her, denied her access to her court records and discovery, advised her not to accept a 27-year fully negotiated plea offer, but then advised her to take the open plea because she would receive a lighter sentence. At a status hearing on November 24, 2004, the State informed the circuit court that the motion to withdraw the guilty plea was untimely because it was not filed within 30 days of the sentence. See *id.* Noting that it had only denied the motion to reconsider sentence on October 1, 2004, the circuit court stated that it was going to "allow" petitioner to file the motion to withdraw and appoint conflict counsel for her due to the allegation that she pled guilty due to the ineffective assistance of counsel. Appointed counsel sought repeated continuances to prepare an amendment to the *pro se* motion, culminating in the eventual filing of an amended motion to withdraw the guilty plea on February 14, 2006, with an evidentiary hearing held the same day.

¶ 13                    E. Evidentiary Hearing on Motion to Withdraw Guilty Plea

¶ 14        At the hearing, petitioner testified more specifically about the abuse she suffered at the hands of Buchanan and that she had wished to pursue a compulsion defense to the charges based on Buchanan's use of a gun to make her participate. After a preliminary investigation, defense counsel told petitioner "there was nothing left to do" and assured her if she took the plea for 20 to 35 years' incarceration, she would "get the minimum." Plea counsel testified that she discussed the compulsion defense with petitioner based on the long underlying history of domestic violence between petitioner and Buchanan but counseled her that trials are inherently uncertain. Finding petitioner was "not credible," the circuit court denied the amended motion to withdraw. However, despite these extensive proceedings, the circuit court had no subject-matter jurisdiction to extend the time for filing the motion to withdraw or to consider the merits thereof because, when petitioner filed the motion, more than 30 days had elapsed since her sentence was imposed and the circuit court did not extend the deadline within the 30 days. See *People v. Flowers*, 208 Ill. 2d 291, 303 (2003).

¶ 15                      F. Counsel Files an Ineffective Notice of Appeal

¶ 16        On February 21, 2006, appointed counsel filed a notice of appeal on behalf of petitioner, and the Office of the State Appellate Defender (OSAD) was appointed to represent petitioner in that appeal. However, the notice of appeal was ineffective to perfect an appeal on the merits of the motion to withdraw because of the failure of counsel to file a motion to withdraw the guilty plea within 30 days of the sentence. See *id.* (no appeal from a plea of guilty shall be taken unless a motion to withdraw guilty plea is filed within 30 days of sentence). In addition, the notice of appeal was untimely because the proceedings on the motion to withdraw the plea did not extend the time for filing the appeal past the 30 days following the denial of the timely motion to reconsider the sentence. See Ill. S. Ct. R. 606(d) (eff. Dec. 13, 2005) (notice of appeal must be filed with the clerk within 30 days of disposition of timely filed postjudgment motion).

¶ 17        The appellate court ordered OSAD to show cause why the appeal should not be dismissed for a lack of appellate jurisdiction. OSAD unsuccessfully argued that, because the State acquiesced to the untimely proceedings on the motion to withdraw the guilty plea, the circuit court was revested with jurisdiction to consider the motion, which resulted in the appellate court having jurisdiction to consider it on the merits. The appellate court rejected OSAD's revestment argument and dismissed the appeal on September 19, 2006. *People v. Lighthart*, 367 Ill. App. 3d 1103 (table) (unpublished order under Illinois Supreme Court Rule 23). Accordingly, a petition for leave to appeal the order dismissing the appeal was due in this court on October 24, 2006. See Ill. S. Ct. R. 315(b) (eff. Aug. 15, 2006) (unless a timely petition for rehearing is filed, the party seeking review must file the petition for leave to appeal within 35 days of the entry of the appellate court's judgment).

¶ 18        OSAD did not petition this court for leave to appeal the appellate court's decision dismissing the appeal for lack of jurisdiction. OSAD sent petitioner a letter on November 6, 2006, after the deadline for filing a petition for leave to appeal to this court had passed, informing her that her appeal was dismissed because her "guilty plea was filed too late." The letter informed petitioner that she would need to file a postconviction petition to challenge her conviction and sentence. However,

it did not inform her of the time requirements for filing the petition.

¶ 19                        G. Petitioner Files *Pro Se* Postconviction Petition

¶ 20        On August 10, 2007, petitioner filed a *pro se* postconviction petition alleging that she received ineffective assistance of counsel. She faulted her plea counsel for failing to investigate and present a compulsion defense based on the domestic violence she endured from Buchanan and restated her allegations regarding ineffective assistance in the negotiation of the plea. In addition, she alleged ineffective assistance of plea counsel for failing to file a timely motion to withdraw the guilty plea, which culminated in the loss of her right to appeal her conviction and sentence. On October 22, 2007, the circuit court dismissed the petition at the first stage, finding it to be frivolous and patently without merit.

¶ 21        On June 12, 2009, the appellate court reversed the circuit court's decision, finding that the postconviction petition states the gist of a constitutional claim that, because of the ineffective assistance of counsel, petitioner lost her right to challenge the voluntariness of her guilty plea and, consequently, her right to appeal her conviction. *People v. Lighthart*, 391 Ill. App. 3d 1129 (table) (unpublished order under Illinois Supreme Court Rule 23). The appellate court remanded the postconviction petition to the circuit court for second stage proceedings under the Act. *Id.* In so doing, the appellate court observed that petitioner "may well wish to resurrect the other arguments she advanced in her petition, as the Act does not recognize the partial dismissal of postconviction petitions." *Id.* (citing *People v. Rivera*, 198 Ill. 2d 364, 371 (2001). The mandate issued on August 26, 2009.

¶ 22                    H. Unconscionable Delay in Second Stage Proceedings

¶ 23        Upon remand to the circuit court, counsel was appointed to represent petitioner on September 11, 2009. A review of the record reveals that there was an inexcusable and unconscionable 11½-year delay in the second stage proceedings following that initial appointment of counsel. Between September 2009 and March 2014, the circuit court held approximately 25 status conferences, in which counsel requested and was granted continuances, stating, at different times, that counsel needed more time to review the case, time to amend the petition, and time to

correspond with petitioner. In March 2014, counsel withdrew because he was appointed as an associate judge and, by that time, had not filed an amended petition or otherwise moved the proceedings forward.

¶ 24 A second attorney was appointed to represent petitioner in May 2014. After requesting and receiving six continuances, counsel filed an amended postconviction petition on May 27, 2015. The State was then granted four continuances so that it could prepare a response. Before a response was filed, the second appointed counsel withdrew due to an unspecified conflict on May 13, 2016. A third attorney was appointed to represent petitioner the same day.

¶ 25 Although the amended postconviction petition drafted by prior counsel remained pending without response by the State, the third appointed counsel requested and received approximately 12 continuances between May 2016 and August 2018, before filing a second amended postconviction petition. The State then requested and received continuances to draft the response until May 24, 2019, when private counsel entered an appearance on behalf of petitioner. Private counsel received continuances to file a supplemental postconviction petition, which he filed on January 3, 2020.

¶ 26                                I. Supplemental Postconviction Petition

¶ 27 In the supplemental petition, petitioner further developed her allegations of ineffective assistance of trial counsel, alleging that, prior to advising her to plead guilty to first degree felony murder, counsel failed to investigate and interview available witnesses regarding the repeated physical abuse she suffered at the hands of Buchanan, which would have supported a compulsion defense, prior to advising petitioner to plead guilty to first degree felony murder instead of proceeding to trial. In addition, the supplemental petition reiterated the allegations regarding the ineffective assistance of counsel during plea negotiations, as well as ineffective assistance in postjudgment proceedings, which resulted in her inability to pursue a direct appeal. Between the original, amended, and supplemental petitions, there are several affidavits attesting to the history of severe abuse petitioner suffered at the hands of Buchanan, as well as petitioner's affidavit regarding the facts and circumstances surrounding her involvement with Buchanan on the date in question.

¶ 28                              J. The State's Motion to Dismiss

¶ 29        The State sought and received three further continuances to draft a response to the supplemental petition. On December 7, 2020, the State filed a motion to dismiss the postconviction petition, arguing, *inter alia*, the petition is untimely pursuant to section 122-1(c) of the Act. 725 ILCS 5/122-1(c) (West 2006). According to the motion, because petitioner filed a direct appeal from her conviction but did not file a petition for leave to appeal from the order dismissing that appeal, she was required to file a postconviction petition by April 23, 2007, six months from the date the petition for leave to appeal was due in this court. Because she did not file the petition until August 10, 2007, the State argued her petition was required to be dismissed. In support, the State cited *People v. Byrd*, 2018 IL App (4th) 160526, which held that if a petitioner files a notice of appeal, regardless of its effectiveness, the six-month limitation period applies.

¶ 30        In response, petitioner argued that, due to the ineffective assistance of counsel, petitioner lost her right to directly appeal her conviction and sentence when counsel failed to file a timely motion to withdraw her guilty plea as required by Rule 604(d). Petitioner argued that, as a result, the notice of appeal filed by counsel was a nullity before it was filed and should not be considered the filing of a direct appeal for purposes of section 122-1(c) of the Act. Petitioner argued that, because she could not, and thus did not, file a direct appeal from her conviction, her postconviction petition was required to be filed within three years of the August 17, 2004, judgment of conviction, rendering the August 10, 2007, petition timely.

¶ 31        In support of her position, petitioner cited *People v. Ross*, 352 Ill. App. 3d 617 (2004), a Third District decision holding that, in a case where Rule 604(d) precludes a defendant from filing an appeal due to the failure to file a timely motion to withdraw a guilty plea, the filing of a notice of appeal does not constitute the filing of a direct appeal for purposes of section 122-1(c). The circuit court agreed with the State and dismissed the postconviction petition for untimeliness on April 15, 2021, 11½ years after the petition was remanded by the appellate court for second stage proceedings under the Act.

¶ 32                              K. Appellate Court Proceedings

- 8 -

¶ 33    Before the appellate court, focus centered on whether *Ross* or *Byrd* governed the issue of the timeliness of the postconviction petition. The appellate court found the *Byrd* case controlled, and following *Byrd*, petitioner's counsel's filing of the ineffective notice of appeal on February 21, 2006, constituted the filing of a direct appeal for the purposes of section 122-1(c) of the Act. 2022 IL App (2d) 210197, ¶ 43. The appellate court reasoned that, under the plain language of the statute, only the "filing" of an appeal is required and to hold that an appeal is only filed if it is resolved on its merits would be to add language to the statute that is not present. *Id.* The appellate court agreed with *Byrd*, finding that, pursuant to Illinois Supreme Court Rule 606(a) (eff. Mar. 12, 2021), the only requirement for " 'perfecting' " an appeal is to file a notice of appeal and that the timeliness element set forth in Rule 606(b) was not relevant to the question of whether an appeal had been " 'filed.' " 2022 IL App (2d) 210197, ¶ 44. Finally, the appellate court found that this court's use of the phrase " 'notice of appeal' " interchangeably with " 'direct appeal' " in discussing section 122-1(c) of the Act in *People v. Johnson*, 2017 IL 120310, ¶ 23, "strongly support[s] *Byrd*'s holding." 2022 IL App (2d) 210197, ¶ 45.

¶ 34    As for the prior *Ross* decision, the appellate court found that the decision "was not well reasoned." *Id.* ¶ 46. The court found *Ross* addressed a prior version of section 122-1(c), which was effective from July 1, 1997, to November 18, 2003. *Id.* Moreover, the appellate court found that, although noncompliance with Rule 604(d) "precluded the appellate court from reaching the merits of the defendant's direct appeal," this did not preclude petitioner from filing a petition for leave to appeal to this court, which would trigger the six-month period. *Id.*

¶ 35    Finally, the appellate court rejected the notion that *Ross* controlled the deadline for filing a postconviction petition in her situation. *Id.* ¶ 48. The court reasoned that the version of the statute that *Ross* interpreted had been amended "over two years prior," and there was no indication in the record that petitioner was relying on *Ross* in the first place. *Id.* Finally, the appellate court did not address the issue of whether petitioner was culpably negligent in the delay in filing her petition because she did not argue the issue. *Id.* ¶ 49. Thus, the appellate court affirmed the circuit court's dismissal of the postconviction petition as untimely. This court granted petitioner leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2021).

## II. ANALYSIS

### A. Standard of Review

The primary substantive legal issue presented by this appeal is whether the courts below erred in applying the six-month time limit set forth in section 122-1(c) of the Act, which applies in a case where petitioner has filed a direct appeal, although the notice of appeal was untimely and thus the appellate court lacked jurisdiction, and petitioner had lost the right to appeal due to the failure to file a timely motion to withdraw a guilty plea as required by Rule 604(d). The standard for our review of issues of timeliness as it pertains to a postconviction petition at the second stage of proceedings have been set forth by this court as follows:

> "The Act provides a method by which persons under criminal sentence in this state can assert that their convictions were a result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. [Citation.] In a noncapital case, a postconviction proceeding contains three stages. *** When reviewing a motion to dismiss at the second stage of proceedings, we accept as true all factual allegations that are not positively rebutted by the record. [Citation.] Our review of a petition dismissed at this stage is *de novo*." *Johnson*, 2017 IL 120310, ¶ 14.

Our review of the order dismissing petitioner's postconviction petition presents an issue involving the interpretation of section 122-1(c) of the Act. In addressing this issue, "our primary objective is 'to ascertain and give effect to the intent of the legislature.' " *Brunton v. Kruger*, 2015 IL 117663, ¶ 24 (quoting *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 56). "The best indication of that intent is the language of the statute itself, which must be given its plain and ordinary meaning." *Id.* (citing *People v. Hammond*, 2011 IL 110044, ¶ 53). " 'We will not depart from the plain statutory language by reading into it exceptions, limitations, or conditions that conflict with the expressed intent of the legislature.' " *Id.* (quoting *Gaffney*, 2012 IL 110012, ¶ 56). "Further, we will not utilize extrinsic aids of statutory interpretation unless the statutory language is unclear or ambiguous." *Id.* " 'A statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more different ways.' " *Id.* (quoting *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 395-96 (2003)). "Because interpretation of a statute is a question of law, our review is *de novo*." *Id.*

(citing *In re Commitment of Fields*, 2014 IL 115542, ¶ 32). Having set forth the standards relevant to our review, we turn to the issue of the timeliness of the postconviction petition in this case.

¶ 40                    B. Section 122-1(c) of the Act Is a Statute of Limitations

¶ 41    This court has said that timeliness is not an inherent element of the right to bring a postconviction petition and, thus, is not a jurisdictional prerequisite. *People v. Boclair*, 202 Ill. 2d 89, 101 (2002). As such, the time limitations set forth in section 122-1(c) of the Act should be considered as an affirmative defense akin to a statute of limitations and can be raised, waived, or forfeited by the State. *Id.* Thus, "[i]f an untimely petition demonstrates that a defendant suffered a deprivation of constitutional magnitude, a dutiful prosecutor may waive that procedural defect during the second stage of post-conviction proceedings." *Id.* at 101-02.

¶ 42                                    C. Statutory Language

¶ 43    The legislature has frequently amended the limitations periods governing the filing of postconviction petitions. See *People v. Harris*, 224 Ill. 2d 115, 125 (2007). The version that governs this case is the one in effect at the time the petition was filed on August 10, 2007. See *id.* This version, which remains effective as of this date, provides, in relevant part, as follows:

> "When a defendant has a sentence other than death, no proceedings under this Article shall be commenced more than 6 months after the conclusion of proceedings in the United States Supreme Court, unless the petitioner alleges facts showing that the delay is not due to his or her culpable negligence. If a petition for certiorari is not filed, no proceedings under this Article shall be commenced more than 6 months from the date for filing a certiorari petition, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence. If a defendant does not file a direct appeal, the post-conviction petition shall be filed no later than 3 years from the date of conviction, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122-1(c) (West 2022).

¶ 44       As the appellate court aptly noted in *Byrd*, and further explained *infra*, this court in *Johnson* inserted a requirement into this section that, in a case where a petitioner does not file a petition for leave to appeal in this court, a postconviction petition be filed within six months of the due date of a petition for leave to appeal. *Byrd*, 2018 IL App (4th) 160526, ¶ 45 (citing *Johnson*, 2017 IL 120310, ¶ 24). Accordingly, if petitioner is held to the six-month statute of limitations, her petition was due six months from the date a petition for leave to appeal the appellate court's dismissal order was due in this court, and it is thus untimely. If petitioner is held to the "3 years from the date of conviction" statute of limitations set for those who do not file a direct appeal, her petition is timely. Based on the statutory language, which provision applies depends on whether petitioner "filed a direct appeal." It is to this question that we now turn.

¶ 45       It is undisputed that petitioner filed a notice of appeal in the appellate court after the circuit court, without subject-matter jurisdiction over her untimely motion to withdraw her guilty plea, denied the motion. The courts below, following the Fourth District decision in *Byrd*, held that filing a notice of appeal constitutes the filing of a direct appeal for purposes of section 122-1 of the Act because, based on the plain meaning of the word "file," all that is required to "file a direct appeal" is the act of filing the notice of appeal. 2022 IL App (2d) 210197, ¶¶ 42-43 (citing *Byrd*, 2018 IL App (4th) 160526, ¶ 52). In addition, the appellate court below and the *Byrd* court emphasized the fact that this court in *Johnson*, while unnecessary to the holding in that case, stated that section 122-1(c) " 'even provides a three-year deadline for filing a petition *when no notice of appeal is filed*.' " (Emphasis in original.) *Id.* ¶ 42 (quoting *Johnson*, 2017 IL 120310, ¶ 23, and citing *Byrd*, 2018 IL App (4th) 160526, ¶ 52). Finally, the courts found support for their holding in the language of Illinois Supreme Court Rule 606(a) (eff. Mar. 20, 2009), which provides that, "appeals shall be perfected by filing a notice of appeal with the clerk of the trial court." For the following reasons, as we consider each of these points of reasoning in turn, we disagree with the *Lighthart* and *Byrd* courts and find the language of the statute to be ambiguous, as the meaning of "file a direct appeal" is subject to at least two reasonable interpretations.

¶ 46                              D. Dictionary Definition of "File"

¶ 47    The appellate court found that the word "file" in section 122-(c) is unambiguous. 2022 IL App (2d) 210197, ¶ 43. In so doing, though, it quoted from Merriam-Webster Online Dictionary, which, in relation to law and the courts, presents several potentially relevant definitions: (1) to place among official records as prescribed by law; (2) to return to the office of the clerk of a court without action on the merits; and (3) to initiate (something, such as legal action) through proper formal procedure. Merriam-Webster Online Dictionary, https://www.merriamwebster.com/dictionary/file (last visited Aug. 31, 2023) [https://perma.cc/8WNM-AGPH]. Of these three definitions, two of them refer to the adherence to law or procedure. Considering the reference in section 122-1(c) to "filing a direct appeal," the definition that makes the most sense is the third, which is to initiate (something, such as legal action) *through proper formal procedure*. Thus, a reasonable interpretation of the phrase "file a direct appeal" is to initiate an appeal through proper formal procedure. However, a review of the definition of "file" in Black's Law Dictionary provides greater support for the appellate court's conclusion than does the regular dictionary definition. Black's Law Dictionary 772 (11th ed. 2019). The primary definition therein is "[t]o deliver a legal document to the court clerk or record" and makes no reference to a requirement that such a document be delivered in conformance with proper procedure. *Id.*

¶ 48    Based on the various uses of the word "file" in conjunction with the legal process, both in ordinary meaning and in legal terms, we conclude that, while equating "file a direct appeal" with "file a notice of appeal" as did the courts below and the court in *Byrd* is a reasonable interpretation of the statutory language, petitioner's interpretation, which requires the notice of appeal to be effective (*i.e.*, to initiate the appeal through proper formal procedure), is also reasonable, especially when the legislature could have used the phrase "file a notice of appeal" in order to clearly convey its intent. Accordingly, we find the phrase to be ambiguous. See *Dynak v. Board of Education of Wood Dale School District 7*, 2020 IL 125062, ¶ 16 (a statute is ambiguous if it is subject to more than one reasonable interpretation). When considering the court's statements in *Johnson* and the language of Rule 606(a), we find further support for the conclusion that the differing interpretations of this language set forth by the parties are both reasonable, thus supporting the conclusion that the language creates an ambiguity.

¶ 49                              E. This Court's Statements in *Johnson*

¶ 50        As the State and the courts below point out, in *Johnson*, this court made a statement that "[t]he statute even provides a three-year deadline for filing a petition when *no notice of appeal is filed*" and that "[w]e see no reason for the legislature to provide a deadline when *no notice of appeal has been filed* but not to include one when no petition for leave to appeal has been filed." (Emphases added.) 2017 IL 120310, ¶ 23. Accordingly, this court in *Johnson* seemed to equate the filing of an appeal with the filing of the notice of appeal, lending support for an interpretation of that provision that would impose a six-month statute of limitations in any case where a notice of appeal is filed in the appellate court, regardless of whether it is filed "through proper formal procedure." However, in *Johnson*, the court was called on to consider whether there was any deadline imposed on someone who filed an appeal in the appellate court but no petition for leave to appeal in this court. *Id.* ¶ 17. Because petitioner in that case did not contend that he had not filed a direct appeal, the court had no need to interpret the phrase because it was not germane to the court's analysis. Accordingly, the characterization of the statutory language as providing a three-year deadline when "no notice of appeal has been filed" is *obiter dictum*, as it was not essential to the outcome of the case, is not an integral part of the opinion, and thus is not binding authority or precedent within the *stare decisis* rule. See *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 236 (2010). Thus, this court's statement in *Johnson* does not clarify the ambiguity presented by the language of section 122-1(c) of the Act.

¶ 51                                    F. Rule 606(a)

¶ 52        Illinois Supreme Court Rule 606(a) (eff. Mar. 12, 2021) provides that "[a]ppeals shall be perfected by filing a notice of appeal with the clerk of the trial court" and that "[n]o step in the perfection of the appeal other than the filing of the notice of appeal is jurisdictional." The State argues, and the courts below found, that this language supports a finding that the filing of a notice of appeal is to be considered the filing of a direct appeal for purposes of section 122-1. Again, this is a reasonable interpretation of the statutory language and is indeed supported by the language of Rule 606(a).

¶ 53    Nevertheless, Rule 606(b) goes on to place a time limit on the filing of the notice of appeal and excepts from that time limit appeals from motions to withdraw guilty pleas, for which it references Rule 604(d). Rule 604(d) provides that no appeal shall be taken in such a case without the filing of a timely motion to withdraw the guilty plea. Accordingly, these provisions lend credence to our conclusion that it is also a reasonable interpretation of section 122-1 to find that, to file a direct appeal, a timely notice of appeal is required, as is compliance with Rule 604(d) when necessary. As further illustration of this conclusion, we note that the courts often interchangeably refer to the "filing of a notice of appeal" and the "filing of a timely notice of appeal" when describing the requirements for triggering the jurisdiction of the appellate court. See, *e.g.*, *People v. Smith*, 228 Ill. 2d 95, 104 (2008) ("The filing of a notice of appeal 'is the jurisdictional step which initiates appellate review.' " (quoting *Niccum v. Botti, Marinaccio, DeSalvo & Tameling, Ltd.*, 182 Ill. 2d 6, 7 (1998))); *cf. People v. Patrick*, 2011 IL 111666, ¶ 20 ("The timely filing of a notice of appeal is the only jurisdictional step for initiating appellate review.").

¶ 54    For the foregoing reasons, we find that the language in section 122-1 of the Act, which sets forth a three-year statute of limitations for the filing of a postconviction petition when defendant "does not file a direct appeal," is subject to more than one reasonable interpretation and is thus ambiguous, and we will resort to extrinsic aids of statutory interpretation to determine legislative intent. See *Krohe*, 204 Ill. 2d 392, 395 (2003). In so doing, we turn to the history of section 122-1 of the Act and any discernible legislative debates, as a statute's legislative history and debates are " '[v]aluable construction aids in interpreting an ambiguous statute.' " *Id.* at 397 (quoting *Advincula v. United Blood Services*, 176 Ill. 2d 1, 19 (1996)).

¶ 55                           G. Legislative History and Debates

¶ 56    This court outlined the early history of section 122-1(c) of the Act in *Johnson*, noting that the legislature has gradually decreased the time period in which a postconviction petition may be filed. 2017 IL 120310, ¶ 21. By 1995, the time had been decreased to a period of three years from the date of conviction, unless a petition for leave to appeal to this court or a petition for writ of *certiorari* was either due to be filed or filed and denied, in which case the petition was due six months from the due date or denial date. *Id.* (citing Pub. Act 86-1210, § 2 (eff. Jan. 1, 1992),

- 15 -

Pub. Act 87-580, § 1 (eff. Jan. 1, 1992), and Pub. Act 88-678, § 15 (eff. July 1, 1995)).

¶ 57    The version of section 122-1(c) that was in effect between 1997 and 2003 omitted a deadline that was tied to *certiorari* petitions in the United States Supreme Court and added a deadline in cases where a petition for leave to appeal had been allowed in this court, but with a three-year "statute of repose," thus providing:

> "No proceedings under this Article shall be commenced more than 6 months after the denial of a petition for leave to appeal or the date for filing such a petition if none is filed or more than 45 days after the defendant files his or her brief in the appeal of the sentence before the Illinois Supreme Court (or more than 45 days after the deadline for the filing of the defendant's brief with the Illinois Supreme Court if no brief is filed) or 3 years from the date of conviction, *whichever is sooner*, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." (Emphasis added.) Pub. Act 90-14, art. 2, § 2-240, (eff. July 1, 1997).

¶ 58    Effective November 19, 2003, as part of a legislative package toward "death penalty reform," section 122-1(c) was amended to provide a specific statute of limitations for cases involving death sentences, with accrual tied to direct appeal proceedings before the United States Supreme Court, providing:

> "Except as otherwise provided in subsection (a-5),[2] if the petitioner is under sentence of death, no proceedings under this Article shall be commenced more than 6 months after the denial of a petition for certiorari to the United States Supreme Court on direct appeal, or more than 6 months from the date for filing such a petition if none is filed, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." Pub. Act 93-605, § 15 (eff. Nov. 19, 2003).

---

[2]Subsection (a-5) of section 122-1 of the Act provides for the filing of a postconviction petition in cases involving newly discovered evidence establishing a substantial basis to believe the petitioner is actually innocent in cases involving the death penalty, to be commenced "within a reasonable period of time after the person's conviction." 725 ILCS 5/122-1(a-5) (West 2022).

¶ 59    In contrast, cases that did not involve the death penalty continued with a statute of limitations accrual tied directly to proceedings before this court, but with simplified language tying such accrual solely to the petition for leave to appeal:

"When a defendant has a sentence other than death, no proceedings under this Article shall be commenced more than 6 months after the denial of the Petition for Leave to Appeal to the Illinois Supreme Court, or more than 6 months from the date for filing such a petition if none is filed, unless the petitioner alleges facts showing the delay is not due to his or her culpable negligence." *Id.*

¶ 60    Noticeably absent from this version of the statute is the three-year "repose" period that was included in the prior versions. This amendment to the provision was short-lived, however, as it was amended by the legislature effective August 20, 2004, culminating in the version that remained in effect at the time petitioner filed her postconviction petition in 2007. See Pub. Act 93-972, § 10 (eff. Aug. 20, 2004). This version left the distinction between death penalty and non-death-penalty cases intact. *Id.* As to cases involving the death penalty, the language was changed to clarify the applicable statute of limitations whether a petition for writ of *certiorari* is granted or denied by the United States Supreme Court. Thus, this version applicable to death penalty cases provided:

"Except as otherwise provided in subsection (a-5), if the petitioner is under sentence of death and a petition for writ of certiorari is filed, no proceedings under this Article shall be commenced more than 6 months after the conclusion of proceedings in the United States Supreme Court, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence. If a petition for certiorari is not filed, no proceedings under this Article shall be commenced more than 6 months from the date for filing a certiorari petition, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122-1(c) (West 2004).

¶ 61    Thus, in a case involving the death penalty, the amendment clarified that a postconviction petition is required to be filed within six months after conclusion of any direct appeal before the United States Supreme Court or, if there is no such direct appeal, six months from the date a petition for writ of *certiorari* would be due to effectuate such a direct appeal. *Id.* Inexplicably though, the provision

- 17 -

regarding cases not involving the death penalty was likewise amended, deleting any reference to proceedings before this court and inserting reference to proceedings before the United States Supreme Court. See *id.* This is the provision in effect when the petitioner's direct appeal was dismissed and when she filed her postconviction petition, and we repeat it here, in relevant part, for convenience:

> "When a defendant has a sentence other than death, no proceedings under this Article shall be commenced more than *6 months after the conclusion of proceedings in the United States Supreme Court*, unless the petitioner alleges facts showing that the delay is not due to his or her culpable negligence. *If a petition for certiorari is not filed, no proceedings under this Article shall be commenced more than 6 months from the date for filing a certiorari petition*, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence. *If a defendant does not file a direct appeal, the post-conviction petition shall be filed no later than 3 years from the date of conviction*, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." (Emphases added.) 725 ILCS 5/122-1 (West 2004).

¶ 62        Pursuant to this amendment, in a non-death-penalty case, the plain language of the statute seemed to tie accrual of a six-month statute of limitations solely to proceedings before the United States Supreme Court, or the due date of a petition for writ of *certiorari* if no such proceedings were had, and inserted a three-year limitations period, but only for those cases where a defendant did not file a direct appeal. As this court explained in *Johnson*, however, for defendants who appealed to the appellate court but did not file a petition for leave to appeal in this court, there was no way to calculate the due date of a petition for writ of *certiorari*. 2017 IL 120310, ¶ 20. This is because (except in death penalty cases) the United States Supreme Court only has jurisdiction to consider a petition for writ of *certiorari* when an appeal has been taken to the state court of last resort. *Id.* As such, United States Supreme Court Rule 13 provides that a petition for *certiorari* must be filed within 90 days of this court's judgment. *Johnson*, 2017 IL 120310, ¶ 20.

¶ 63        In *Johnson*, this court rejected the petitioner's argument that, because he did not file a petition for leave to appeal in this court, he was not subject to a statute of limitations for the filing of a postconviction petition at all, finding a literal reading

- 18 -

of that section of the statute is at odds with its purpose, which is to provide a deadline for filing a postconviction petition, and created an absurd result. *Id.* ¶ 21. Accordingly, this court "inserted" the petition for leave to appeal language into the statute, which "the legislature omitted by oversight," thus providing that a postconviction petition must be filed within six months of (1) the conclusion of proceedings before the United States Supreme Court or, if none, (2) the date for filing a petition for *certiorari* with the United States Supreme Court or, if none, the date for filing a petition for leave to appeal to this court. *Id.* ¶ 24.

¶ 64        A review of legislative debate of this amendment is unhelpful to this court. According to a brief description given by Senator Cullerton when describing an unrelated floor amendment during the bill's second reading, it was considered to be "a cleanup of the *** death penalty reform bill" from the year before. 93d Ill. Gen. Assem., Senate Proceedings, May 12, 2004, at 43 (statement of Senator Cullerton). A discussion in the House when debating the adoption of the bill considering the Senate amendment reveals a lot of confusion on the part of a cosponsor of the bill and others as to the meaning of the change to section 122-1(c). See 93d Ill. Gen. Assem., House Proceedings, May 27, 2004, at 19-22. The following colloquy took place between one of the cosponsors and a representative:

> "[Representative]: And then if. . . if. . . I guess an inmate decides to file a petition, he has 3 years to file it?
>
> [Cosponsor]: In death penalty cases he has 3 years.[3] I think in a nondeath penalty case this would allow. . . right. He has 3 years if he chooses not to file a direct appeal. So this would extend the time.
>
> [Representative]: So, this last appeal that has to be filed within 3 years, is that an appeal to the U.S. Supreme Court or. . .?
>
> [Cosponsor]: What happens is, once a verdict has been issued the person can either file a direct appeal or he can. . .

---

[3]As set forth above, there is no three-year deadline set forth in this version of section 122-1(c) of the Act for death penalty cases.

[Representative]: But who is. . . who is. . . the 3-year deadline is for him to appeal to whom or what organization or what authority?

[Cosponsor]: It's. . . it's the period of time that he has to file the petition. So, he has 3 years to file for a post-conviction hearing on that particular case, to go back into his case. So in other words, if there was new evidence or something that came about during his appeal, that first appeal, this would still allow them the 3 year[s'] time framework to then bring that new evidence up to. . .[4]

"[Representative]: Currently, what's the time frame?

[Cosponsor]: Currently, it's 3 years.[5]

[Representative]: It's…it's 3 years now?

[Cosponsor]: Right. It's 3 years currently.

[Representative]: So, we're. . . we're. . .

[Cosponsor]: "It doesn't change that. . . it doesn't expand that length of time. But it's when the 3 years start.

[Representative]: We're not lengthening it and we're not shortening it, is that correct?

[Cosponsor]: No. We're just clarifying it, that's correct.

[Representative]:Do you think 3 years is enough time?

\*\*\*

[Cosponsor]: Well, that's. . . that's been agreed upon between defense attorneys and prosecutors at the same time.

---

[4]As set forth above, the three-year period only applies when a defendant does not file a direct appeal, and a six-month period is applicable when an appeal has been filed, so this statement is incorrect.

[5]Again, prior to the passage of this amendment, any three-year period had been eliminated from the section, and the amendment being debated was reintroducing the three-year period in a non-death-penalty case where a defendant does not file a direct appeal.

[Cosponsor]: And the public defender's office is approving?

[Representative]: Right, they're all onboard with this." *Id.* at 21-22 (statements of Representatives M. Davis and Turner).

Without further discussion on the issue of the amendment to section 122-5 of the Act, the bill was passed into law. *Id.* at 25.

¶ 65                   H. This Court's Conclusion Regarding Legislative Intent

¶ 66       The debates on the applicable amendment to section 122-1 of the Act do not assist the court in determining whether the legislature intended the filing of a notice of appeal, regardless of its effectiveness in conferring appellate jurisdiction on the court of review, to trigger the six-month provision or whether the legislature intended the three-year provision to operate only in cases where no notice of appeal had been filed at all, because the statements made during the debate conflict with the plain language of section 122-1. However, we do find some guidance in the history of the statute, as outlined above.

¶ 67       Considering the overall legislative trend of shortening the statute of limitations down to a three-year statute with a series of amendments designed to ensure the relevant process of appeal is complete prior to the running of a shorter, six-month limitations period, we find that the legislature intended that a six-month limitations be applied where a deadline for filing a petition for leave to appeal or petition for a writ of *certiorari* can be ascertained by reference to the entry of an order by a court of review. As such, we find the legislature intended that the three-year statute of limitations be applicable only where neither this court nor the United States Supreme Court has jurisdiction to consider a petition for leave to appeal or for a writ of *certiorari*, and thus there is no method of calculating a six-month deadline. For these reasons, we hold that a petitioner is to be found to have "filed a direct appeal" if he or she files a notice of appeal that culminates in an appellate court order disposing of the appeal, whether by dismissal or on the merits.[6]

---

[6]Of course, this court would not have jurisdiction over a petition for leave to appeal from an order striking a notice of appeal as premature due to a pending postjudgment motion as set forth in Illinois Supreme Court Rule 606(b) (eff. Sept. 18, 2003), and an appellate court order striking the

¶ 68    We are confident that this bright-line rule will ultimately make it easier for self-represented, incarcerated litigants to ascertain the appropriate deadline for filing a postconviction petition because it will be unnecessary for them to differentiate between effective and ineffective notices of appeal or to inquire for the meaning of the disposition of their appeal, whether on the merits, on jurisdictional grounds, or for failure to comply with rules requiring a condition precedent, such as Rule 604(d). Once an incarcerated, self-represented litigant is in receipt of an order of the appellate court disposing of her appeal, she will be able to either file a petition for leave to appeal with this court within 35 days pursuant to Rule 315, or she will have six months from the date such a petition would be due in which to file a postconviction petition.

¶ 69                          I. Application of Our Holding to Petitioner

¶ 70    Here, petitioner lost her right to appeal due to counsel's failure to comply with Rule 604(d), and her notice of appeal was untimely because her untimely motion to withdraw her guilty plea did not toll the deadline for filing a notice of appeal. However, she did, in fact, file a notice of appeal, although ineffective, which culminated in an appellate court order dismissing her appeal on September 19, 2006. This dismissal order triggered this court's jurisdiction to consider a petition for leave to appeal pursuant to Rule 315 (Ill. S. Ct. R. 315 (eff. Aug. 15, 2006)), with a 35-day deadline for filing the petition expiring on October 24, 2006. At that point, she had the option to file a petition for leave to appeal in this court within 35 days or to file a postconviction petition within six months of the deadline for filing a petition for leave to appeal, which was April 24, 2007. Because she did not file a petition for leave to appeal and did not file her postconviction petition until August 10, 2007, her petition is untimely pursuant to section 122-1(c) of the Act, as interpreted by this court in *Johnson* and in this opinion. Thus, we agree with the appellate court on the issue of the construction and application of section 122-1(c). Having found the petition to be untimely, we turn to consider whether the circuit court erred in finding petitioner culpably negligent for the delay in filing.

---

notice of appeal does not constitute a dismissal of the appeal. Thus, an order of the appellate court striking a notice of appeal as premature does not trigger the six-month period.

¶ 71                          J. Lack of Culpable Negligence

¶ 72        The appellate court declined to consider the issue of petitioner's culpable negligence because she did not argue that she was not culpably negligent in filing her petition beyond the deadline. 2022 IL App (2d) 210197, ¶ 49.[7] However, petitioner has taken the position from the start that her petition is timely, a position that, as explained above, represented a reasonable interpretation of section 122-1(c) of the Act. From the time the appellate court mandated that petitioner's claims advance to the second stage of proceedings, she has had three appointed attorneys and one privately retained attorney, and none of them appeared to recognize a timeliness issue with the petition until the State filed its motion to dismiss the petition on December 7, 2020. Regardless, this court has held Rule 651(c) (Ill. S. Ct. R. 651(c) (eff. July 1, 2017)) requires counsel to amend an untimely *pro se* petition to allege any available facts necessary to establish that the delay was not due to the petitioner's culpable negligence. *People v. Perkins*, 229 Ill. 2d 34, 49 (2007). Thus, in light of our holding regarding the untimeliness of the petition, this court must, at a minimum, remand this cause to the circuit court to allow for counsel to consult with petitioner and to amend the petition to allege facts establishing petitioner's lack of culpable negligence. See *id.* However, for the following reasons, we decline to do so in the interests of judicial economy and in light of the inordinately long procedural history in this case, because we find petitioner could not have been culpably negligent in the late filing of her petition under the circumstances as they existed in 2007 when she filed her petition.

¶ 73        This court has held that culpable negligence in the context of section 122-1(c) of the Act contemplates something greater than ordinary negligence and is akin to recklessness. *Boclair*, 202 Ill. 2d at 106-08. While ignorance of the law will not excuse any delay in bringing a postconviction petition (see *Johnson*, 2017 IL 120310, ¶ 26 (citing *Boclair*, 202 Ill. 2d at 104-05)), this court has upheld a finding

---

[7]Petitioner has alleged a lack of culpable negligence in her briefs submitted to this court and, to the extent that waiver or forfeiture of that issue could be found, considering her argument with respect to timeliness and the vast amount of time that has passed since she filed her postconviction petition, we choose to overlook it under the unique circumstances presented here. See *Walworth Investments-LG, LLC v. Mu Sigma, Inc.*, 2022 IL 127177, ¶ 94 ("waiver and forfeiture are limitations on the parties and not on the court, and a court may overlook forfeiture where necessary to reach a just result or maintain a sound body of precedent").

that delay was not due to a postconviction petitioner's culpable negligence where the law and legal doctrine governing petitioner's claims was evolving and was not clarified by this court until after the deadline, pursuant to the version of section 122-1(c) that was applicable at that time, had passed (see *People v. Hernandez*, 296 Ill. App. 3d 349 (1998)).

¶ 74 Here, we find that, at the time that petitioner filed her postconviction petition on August 10, 2007, she had no way of knowing her petition was untimely. First, at the time she filed her petition, as described in detail above, section 122-1(c) of the Act had been amended to omit any reference to a petition for leave to appeal in this court when setting forth a six-month deadline for filing a postconviction petition, and the text was replaced with a six-month deadline tied to the conclusion of proceedings before the United States Supreme Court or the deadline for filing a petition for a writ of *certiorari*. See Pub. Act 93-972, § 10 (eff. Aug. 20, 2004). However, as this court pointed out in *Johnson*, there is no way to calculate a deadline for filing a petition for writ of *certiorari* in the United States Supreme Court in a non-death-penalty case unless a petition for leave to appeal in this court were filed and denied or allowed with an opinion from this court on the merits. 2017 IL 120310, ¶ 20. While this court found the omission of the petition for leave to appeal was legislative oversight and inserted that language into the statute by judicial opinion, this did not happen until 10 years after petitioner filed her petition, so she did not have the benefit of this court's decision in *Johnson*. See *id.*

¶ 75 In addition to the foregoing, at the time petitioner filed her petition, *Ross* was the only reported opinion in Illinois addressing the timing of a postconviction petition in a situation where a petitioner has lost the right to directly appeal the conviction due to the failure to file a timely motion to withdraw a guilty plea pursuant to Rule 604(d). See 352 Ill. App. 3d at 619. Contrary to the finding of the appellate court, we do not see how the August 2004 amendment to section 122-1 of the Act impacted the *Ross* holding as it relates to petitioner. Under both versions of the statute, the six-month period was tied to the appellate process. See Pub. Act 93-972, § 10 (eff. Aug. 20, 2004). The *Ross* court held that, "[f]or postconviction purposes, a direct appeal dismissed for failure to file a timely postplea motion pursuant to Rule 604(d) is tantamount to no appeal at all." 352 Ill. App. 3d at 620. Thus, although the petitioner had filed a notice of appeal, it was dismissed for failure to comply with Rule 604(d), so the six-month limitation period was not

triggered, and petitioner had three years from the date of conviction to file a timely petition for postconviction relief. *Id.* This was petitioner's situation at the time she filed her postconviction petition, and circuit courts were bound to follow *Ross* until the Fourth District issued its decision in *Byrd* in 2018, creating a split in authority. See *People v. Carpenter*, 228 Ill. 2d 250, 259-60 (2008) (" 'decisions of an appellate court are binding precedent on all circuit courts regardless of locale,' " and "until this court says otherwise, an applicable appellate court decision must be followed by the circuit courts of this state" (quoting *People v. Harris*, 123 Ill. 2d 113, 128 (1988))).

¶ 76    Based on the unique situation petitioner was in at the time she filed her postconviction petition, where it was impossible to calculate a six-month deadline based on the statutory language at the time and where the only existing precedent established that, because of her counsel's failure to comply with Rule 604(d), her notice of appeal from her conviction was "tantamount to no appeal at all" in the context of the postconviction statute of limitations and she filed her petition within three years of her conviction, we find that petitioner cannot be found to have been culpably negligent for failing to file her postconviction petition within six months of the appellate court's dismissal of her notice of appeal. Thus, despite our holding today, clarifying the applicable period is six months in all cases where an appellate court order triggers this court's jurisdiction to entertain a petition for leave to appeal, we reverse the circuit court's order dismissing the postconviction petition on grounds of untimeliness.

¶ 77    Having found that petitioner could not have been culpably negligent in the late filing of her petition under the circumstances presented here, we remand with instructions that she be permitted to amend her supplemental postconviction petition to include such allegations and for further proceedings consistent with this opinion. In addition, we would be remiss if we did not express our strong disapproval of the delay in these proceedings brought about by appointed counsel and condoned by the circuit court by the granting of no less than 30 continuances spanning over a decade during the second stage of proceedings. Thus, we direct that the proceedings on remand be conducted without further delay.

¶ 78                              III. CONCLUSION

¶ 79        For the foregoing reasons, we hold that pursuant to section 122-1(c) of the Act, in any case where a notice of appeal is filed by a defendant following a conviction, whether that notice of appeal is dismissed on jurisdictional grounds, for noncompliance with Rule 604(d), or heard on its merits, the six-month statute of limitations for filing a postconviction petition applies. Pursuant to this holding, petitioner's postconviction petition was untimely. However, under the unique circumstances presented in this case, petitioner could not have been culpably negligent in failing to file her petition within that six-month period. Accordingly, we reverse the order of the circuit court that dismissed the postconviction petition as untimely, and we remand with directions that petitioner be permitted to amend her supplemental postconviction petition to reflect her lack of culpable negligence and for further proceedings consistent with this opinion, to be conducted without further delay.

¶ 80        Judgements reversed.

¶ 81        Cause remanded with directions.

¶ 82        JUSTICE HOLDER WHITE took no part in the consideration or decision of this case.