2024 IL App (1st) 220366-U

No. 1-22-0366

Order filed March 29, 2024

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 CR 7161 |
| | ) | |
| LARRY McCASKILL, | ) | Honorable |
| | ) | Michele M. Pitman, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Rochford and Justice Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*: The dismissal of McCaskill's postconviction petition is affirmed where the untimely filing of the petition was due to his culpable negligence.

¶ 2    Defendant Larry McCaskill appeals the second-stage dismissal of his petition for postconviction relief under the Post-Conviction Hearing Act (Act) (720 ILCS 5/122-1 *et seq.* (West 2012)). On appeal, he argues that the circuit court erred in dismissing his postconviction petition where (1) he made a substantial showing that counsel on direct appeal was ineffective and

(2) he was not culpably negligent for filing his *pro se* postconviction petition late. We affirm on untimeliness grounds.

¶ 3                                   I. BACKGROUND

¶ 4     Following a jury trial, McCaskill was found guilty of the first degree murder of Maurice Hill and sentenced to 25 years in prison. We affirmed on direct appeal, finding that the trial court failed to comply with Rule 431(b) when admonishing the prospective jurors but that the error did not amount to plain error under the second prong of the plain-error doctrine. *People v. McCaskill*, No. 1-08-1994 (2010) (unpublished order under Illinois Supreme Court Rule 23).

¶ 5     McCaskill filed a petition for leave to appeal (PLA) with the Illinois Supreme Court, which was denied on January 26, 2011. *People v. McCaskill*, 239 Ill. 2d 574 (2011) (table).

¶ 6     On March 6, 2013, McCaskill filed the instant *pro se* postconviction petition. He alleged that his appellate counsel provided ineffective assistance by failing to "seek uniformity by the appellate court (with its previous rulings)" regarding Rule 431(b) violations. McCaskill further alleged that "[c]ounsel's failure to seek appropriate review of the issue was clearly prejudicial to the review process depriving McCaskill an opportunity to be heard." He stated that the Rule 431(b) violation "must be considered to have (adversely) affected the McCaskill's right to a fair trial," and "[t]he right to an impartial jury is so fundamental to due process that any infringement of that right requires reversal by a reviewing court."

¶ 7     On April 5, 2013, the circuit court appointed counsel for McCaskill and docketed his postconviction petition for second-stage proceedings.

¶ 8     On February 1, 2019, the State filed a motion to dismiss McCaskill's petition, asserting that the petition was untimely filed because McCaskill filed it more than two years after the PLA

in his direct appeal was denied. The State further argued the petition did not meet the culpable negligence standard to excuse the delay in filing.

¶ 9    On August 20, 2021, McCaskill filed, through counsel, a response to the State's motion to dismiss, asserting that the untimely filing of his postconviction petition was not due to his culpable negligence, as supported by the facts in his attached affidavit.

¶ 10    In McCaskill's affidavit, he averred that he was 15 years old when he was arrested.[1] He was sentenced in 2008 and sent to Stateville Correctional Center. In 2010, McCaskill was transferred to Pontiac Correctional Center. While at Pontiac in 2010, McCaskill was found to have assaulted a staff member and was transferred to Tamms Correctional Center as punishment. For the period following his transfer from Stateville through his transfer to Tamms, the Illinois Department of Corrections (IDOC) "lost" McCaskill's "transcripts and other legal documents," but they were returned to him after he arrived at Tamms.

¶ 11    McCaskill averred that, at Tamms, "[a]ll inmates were restricted in movement." Inmates could only use the room with law books once every one to two weeks for 45 minutes at a time. The available law books were "many years old with pages torn out and marked up to the point they weren't legible." McCaskill did not recall his appellate attorney telling him about any time restrictions for filing a postconviction petition, and he did not learn of the timeline from the law books at the library. Rather, he ultimately "relied on advice from fellow inmates at Tamms" that he "only had a certain amount of time to file a post-conviction petition." When Tamms was shut down in December 2012, McCaskill was transferred back to Pontiac and was again separated from his "legal documents" during the transfer. He filed his petition after his transfer back to Pontiac.

---

[1]The common law record established McCaskill was arrested in 2006.

McCaskill averred, "Had I known about the time limit on filing a post-conviction petition, I would have filed my petition in a timely manner."

¶ 12     McCaskill also attached an IDOC disciplinary card, which stated that on September 9, 2009, McCaskill received one month's segregation for disobeying a direct order. On April 30, 2010, he received one year's segregation due to "Violent Assault" of staff, where he struck a staff member multiple times in the face. On January 10, 2011, he received separate penalties of two and three months' segregation for impairment of surveillance and disobeying a direct order. On January 12, 2011, he received one month's segregation for "Health, Smoking Or Safety Violations."

¶ 13     On March 11, 2022, following argument, the circuit court granted the State's motion to dismiss McCaskill's petition. The court found that McCaskill's petition was "extremely untimely," noting it was at least 16 months late. The court explained that McCaskill's unawareness of a deadline for filing a postconviction petition was "not a reason for it being filed late." The court further explained that "[i]t wasn't as if [McCaskill] was on constant lockdown" during the time to file the postconviction petition. Untimeliness notwithstanding, the circuit court also addressed the petition on the merits, finding McCaskill's Rule 431(b) claim was barred by *res judicata* because it had already been raised on direct appeal. It also found McCaskill's claim regarding the alleged ineffective assistance of direct appeal counsel lacked merit because "appellate counsels are not required to raise every issue on appeal that the defense wishes."

¶ 14                                    II. ANALYSIS

¶ 15     On appeal, McCaskill asserts the circuit court erred in dismissing his postconviction petition as (1) he made a substantial showing that he was denied the effective assistance of direct

appeal counsel for failing to request review of his Rule 431(b) claim under the first prong of the plain-error doctrine and (2) his untimely filing of the petition was not due to his culpable negligence. We find the untimeliness of McCaskill's postconviction petition dispositive of this appeal.

¶ 16 The Act provides a three-stage method for a criminal defendant to challenge their conviction or sentence for violation of federal or state constitutional rights. *People v. Knapp*, 2020 IL 124992, ¶ 43. At the second stage of postconviction proceedings, counsel is appointed to represent the defendant if necessary, and the State is permitted to file responsive pleadings. *People v. House*, 2021 IL 125124, ¶ 17. If the State files a motion to dismiss the petition, the circuit court must decide whether to grant the State's motion or advance the petition to the third stage for an evidentiary hearing. *People v. Dupree*, 2018 IL 122307, ¶ 28.

¶ 17 When reviewing a motion to dismiss, "we accept as true all factual allegations that are not positively rebutted by the record." *People v. Johnson*, 2017 IL 120310, ¶ 14. A petitioner is only entitled to a third-stage evidentiary hearing where "the allegations in the petition supported by affidavits, records, or other evidence [citation] make a substantial showing" of a deprivation of constitutional rights. (Internal quotation marks omitted.) *Dupree*, 2018 IL 122307, ¶ 28. We review *de novo* the second-stage dismissal of a postconviction petition. *Johnson*, 2017 IL 120310, ¶ 14.

¶ 18 Relevant here, section 122-1(c) of the Act (725 ILCS 5/122-1(c) (West 2012) states:

"[N]o proceedings under this Article shall be commenced more than 6 months after the conclusion of proceedings in the United States Supreme Court, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence. If a petition for *certiorari* is not filed, no proceedings under this Act shall be commenced more than 6

months from the date for filing a *certiorari* petition, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." *Id.*

Under United States Supreme Court Rule 13, "a petition for writ of *certiorari* must be filed within 90 days of [the Illinois Supreme Court's] judgment." *People v. Lighthart*, 2023 IL 128398, ¶ 62.

¶ 19   Here, the Illinois Supreme Court denied McCaskill's PLA on January 26, 2011. *McCaskill*, 239 Ill. 2d 574 (2011) (table). Thus, the time for filing a petition for *certiorari* with the United States Supreme Court ended 90 days after that date, on April 26, 2011. See Sup. Ct. R. 13. Because McCaskill did not file a petition for *certiorari*, he had six months from April 26, 2011 to file his postconviction petition. 725 ILCS 5/122-1(c) (West 2010). McCaskill did not file his petition until March 6, 2013, and concedes that it was untimely filed 16 months beyond the statutory deadline of October 26, 2011.

¶ 20   McCaskill asserts that the untimely filing is excused as he was not culpably negligent for filing his petition late, where he spent considerable time in segregation and was incarcerated at a "notoriously severe" prison that restricted prisoner movement and limited his access to a functioning law library. He also contends that he had no access to his "legal documents" for a period of time, and his appellate counsel failed to inform him there was a deadline to file a petition.

¶ 21   Under section 122-1(c) of the Act, "[a] petition that is untimely will not be dismissed if the petitioner alleges facts showing that the delay in filing the petition was not due to his or her culpable negligence." *Johnson*, 2017 IL 120310, ¶ 26. The "culpably negligent" standard "contemplates something greater than ordinary negligence and is akin to recklessness." *Lighthart*, 2023 IL 128398, ¶ 73. A petitioner bears the burden of showing the lack of culpable negligence. *People v. Stoecker*, 384 Ill. App. 3d 289, 292 (2008). Whether a petitioner has shown that the delay

in filing his petition was not due to his culpable negligence is determined on the specific facts of the case. *People v. Lander*, 215 Ill. 2d 577, 589 (2005).

¶ 22    "[I]gnorance of the law will not excuse any delay in bringing a postconviction petition." *Lighthart*, 2023 IL 128398, ¶ 73. Therefore, "the sole obligation of knowing the time requirements for filing a postconviction petition remains with the McCaskill." *Lander*, 215 Ill. 2d at 588-89. Nevertheless, this court has recognized that, in many circumstances, "the only opportunity available to petitioners to learn the procedural and substantive rules governing the preparation of postconviction petitions is through access to the resources available in a law library." (Internal quotation marks omitted.) *Id.* ¶ 24. Thus, where the record contains evidence showing a lockdown period imposed at a prison that "prevents a [petitioner] from having a meaningful opportunity to prepare a timely postconviction petition, the delay is not the result of the [petitioner's] culpable negligence." (Internal quotation marks omitted.) *People v. Upshaw*, 2017 IL App (1st) 151405, ¶¶ 24-25. However, we will find culpable negligence where a petitioner was placed in segregation with restricted movement due to their own intentional misconduct. *People v. Cortez*, 338 Ill. App. 3d 122, 129-32 (2003).

¶ 23    Accepting McCaskill's averments as true (*Johnson*, 2017 IL 120310, ¶ 14), he has failed to show he was not culpably negligent for filing his petition 16 months late. As grounds for finding lack of culpable negligence, McCaskill avers he had limited access to the law library due to his time in segregation. But according to the disciplinary card McCaskill attached to his petition, he was sentenced to segregation as a result of his own misconduct: one month segregation on September 9, 2009, for disobeying a direct order; one year's segregation on April 30, 2010, for "Violent Assault" of prison staff; two and three months' segregation on January 10, 2011, for

impairment of surveillance and disobeying a direct order, respectively; and one month's segregation on January 12, 2011, for "Health, Smoking Or Safety Violations." Given that McCaskill's placement in segregation was due to his own misconduct, he was culpably negligent for any resulting delay in filing his petition. See *Cortez*, 338 Ill. App. 3d at 129-32.

¶ 24    We are likewise not persuaded by McCaskill's contention that his delay in filing the petition should be excused due to his placement in the "notoriously severe" Tamms facility, which he averred limited prisoner movement and therefore restricted access to his legal documents and the law library. As McCaskill's affidavit acknowledged, he was placed in the Tamms maximum-security facility as punishment for assaulting prison staff. However, "[e]ngaging in intentional misconduct which would, with reasonably foreseeable certainty, result in prison action that would prevent one from filing in a timely manner would in all likelihood fall within the definition of culpable negligence as negligence of a gross and flagrant character." (Internal quotations marks omitted.) *Id.* at 131; *Rodriguez v. Illinois Prisoner Review Board*, 376 Ill. App. 3d 429, 430 (2007) (identifying Tamms as a maximum-security facility).

¶ 25    Moreover, prison officials are not required to grant *pro se* prisoners use of the law library without limitations. See *People v. Banks,* 161 Ill. 2d 119, 140–41 (1994). According to McCaskill, inmates at Tamms were permitted to use the law library once every one to two weeks for 45 minutes at a time. McCaskill has not alleged any additional facts demonstrating that he was deprived of a meaningful opportunity to prepare his postconviction petition, where inmates were provided with some access to the library at Tamms. See *People v. Van Hee*, 305 Ill. App. 3d 333, 337 (1999) (the defendant failed to specifically allege when a prison lockdown denied him access to the law library, and the lock-down did not excuse delay in filing a petition because the defendant

could have accessed the library outside of lockdown). McCaskill therefore has not shown a lack of culpable negligence on this basis.

¶ 26    McCaskill further asserts that he was not culpably negligent for the untimely filing of his petition because, at times, he did not have access to his legal documents. Specifically, McCaskill averred that he did not have access for the period when he was transferred from Stateville through his transfer to Tamms in 2010, and again when he was transferred back to Pontiac after Tamms closed in December 2012. However, accepting that as true, McCaskill has not set forth any details regarding how long he was separated from his legal documents and how this hindered his ability to file a timely petition. Absent such specific facts, his allegation is insufficient to show a lack of culpable negligence. See *People v. Walker*, 331 Ill. App. 3d 335, 341-42 (2002) (the petitioner failed to show a lack of culpable negligence where the court was left to "speculate that defendant's delay was attributable solely or substantially to the prison lockdown").

¶ 27    McCaskill contends that he does not recall his counsel advising him of a filing deadline, and that he only learned of the deadline from other inmates at Tamms. "The absence of professional advice would be relevant only if defendant's ignorance of the Act's time constraints could excuse his failure to adhere to them," but "it is settled that unfamiliarity with the Act's requirements does not show a lack of culpable negligence." *People v. Hampton*, 349 Ill. App. 824, 829 (2004); see *Johnson*, 2017 IL 120310, ¶ 26 (noting that not knowing the applicable filing deadline cannot be used to excuse a delay in filing a postconviction petition). Therefore, this contention does not show a lack of culpable negligence.

¶ 28    McCaskill's untimely postconviction petition was properly dismissed as he failed to demonstrate that the delay in filing was not due to his culpable negligence. Accordingly, we need

not address the merits of McCaskill's remaining issue on appeal. See *People v. Ramirez*, 361 Ill. App. 3d 450, 455 (2005) (declining to address the remaining contentions on appeal where the postconviction petition should have been dismissed as untimely).

¶ 29                                   III. CONCLUSION

¶ 30     For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 31     Affirmed.