No. 2-23-0154
Opinion filed June 18, 2024

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14-CF-1112 |
| ALEKSANDR KIRILYUK, | ) ) | Honorable Salvatore LoPiccolo Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Jorgensen and Mullen concurred in the judgment and opinion.

**OPINION**

¶ 1   Defendant, Aleksandr Kirilyuk, appeals from an order of the circuit court of Kane County granting the State's motion to dismiss as untimely defendant's petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). Defendant contends that the court should have ordered an evidentiary hearing because he alleged facts suggesting that the delay in filing the petition was not due to his culpable negligence. We agree that no hearing was required. Accordingly, we affirm.

¶ 2                                  I. BACKGROUND

¶ 3   Defendant was arrested on June 23, 2014, and charged by complaint with numerous offenses stemming from a June 22, 2014, traffic stop. Bond was set at $200,000. A motion to

reduce bond, filed on July 2, 2014, and later denied, indicated that defendant came to the United States in 1994 from Belarus and was not a United States citizen. On July 14, 2014, bond was posted on behalf of defendant. As a condition of bond, defendant agreed to "report changes of address to the Clerk within 24 hours."

¶ 4     On August 13, 2014, defendant was indicted on four counts of armed violence (720 ILCS 5/33A-2(a) (West 2014)) (counts I through IV), three counts of aggravated driving under the influence (DUI) (625 ILCS 5/11-501(a)(2) (West 2014)) (counts V through VII), two counts of driving while license suspended (*id.* § 6-303(a)) (counts VIII and IX), three counts of aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1), (a)(3)(C); (a)(2), (a)(3)(B-5), (a)(3)(C) (West 2014)) (counts X through XII), and two counts of possession of a fraudulent identification card (15 ILCS 335/14B(b)(1) (West 2014)) (counts XIII and XIV).

¶ 5     On January 29, 2015, defendant appeared in court, along with private counsel. A Russian interpreter was also present. The trial court arraigned defendant on the above charges. During the proceeding, the court twice admonished defendant that he was required to be present each time the case was in court and that, if he failed to appear, he could be tried, convicted, and sentenced in his absence. Defendant indicated that he understood.

¶ 6     On April 30, 2015, defendant appeared in court with counsel. A Russian interpreter was again present. The court set the following court dates: June 12, 2015, at 9 a.m., for status; August 6, 2015, at 1:30 p.m., for final jury trial conference; and August 10, 2015, at 8:30 a.m., for jury trial.

¶ 7     Defendant did not appear at the June 12, 2015, status hearing. Defense counsel represented to the trial court that defendant was "late" and "supposedly coming." The court noted that it was "about 10:29 [a.m.] on a 9:00 o'clock call." The State withdrew the offer it had come prepared to

present and requested that the court issue a warrant. Defense counsel asked the court to give defendant until noon to appear, and the court agreed. Defendant did not appear, and the court issued a warrant.

¶ 8 Nor did defendant appear at the August 6, 2015, final jury trial conference. The trial court asked defense counsel if he had had any contact with defendant and whether defendant would appear. Counsel responded: "I have not had contact with him. I don't think he will, no. I'm quite certain he will not appear today." The State indicated it wanted to proceed *in absentia* and answered ready for trial. Defense counsel indicated that he was "[n]ot really" ready to go to trial on August 10, 2015, and orally requested a continuance. The court said it would proceed to trial *in absentia* on August 10, 2015, barring a written motion to continue.

¶ 9 Defendant did not appear on the August 10, 2015, trial date. Defense counsel indicated that he was "not answering ready for trial." He asked that the trial court not proceed to trial *in absentia* and instead wait for defendant to be arrested. The State objected, and the court ordered the trial to proceed. The court noted that defendant was advised at the January 29, 2015, arraignment that, if he failed to appear in court, his trial and sentencing could proceed in his absence. The court further noted that, on April 30, 2015, defendant, in the presence of an interpreter, was advised of the relevant court dates—June 12, 2015; August 6, 2015; and August 10, 2015.[1] The State produced a transcript from the January 29, 2015, proceeding, which indicated that defendant twice received *in absentia* admonishments. The court next considered whether it should dismiss the interpreter, who was present in court on defendant's behalf, or require her to stay in case defendant appeared.

---

[1]The trial court incorrectly stated that defendant also received *in absentia* admonishments on April 30, 2015.

The court inquired of defense counsel: "[D]o you have any contact with him? Do you have any—any knowledge that he may appear so that I should keep the Court Translator around, or—" Defense counsel interjected, "I would say not at this time, no." The jury trial proceeded *in absentia*.

¶ 10    The evidence generally established the following. On June 22, 2014, defendant was stopped for speeding on Interstate 88. As the officer approached defendant's vehicle, she observed a black Taser on the front passenger seat. She also observed the grip, slide, and extended magazine of a handgun sticking out of a black box on the passenger side floorboard. The officer testified that an extended magazine is distinctive because it extends out from the bottom of the gun. (The officer later discovered that the magazine was loaded.) The officer also smelled alcohol and saw a cup in the center console containing a brown liquid, which appeared to be rum. Defendant failed field sobriety tests. Both his driver's license and identification card were fake. A review of his criminal history showed three prior DUIs from South Carolina and a suspended driver's license from that state.

¶ 11    During trial, the State nol-prossed counts I, III, VIII, IX, X, XI, XII. After hearing the evidence, the jury found defendant guilty on counts II and IV (armed violence), counts V, VI, and VII (aggravated DUI), and counts XIII and XIV (possession of a fraudulent identification card). The trial court granted the State's motion to revoke bond, ordered a presentence investigation report, and issued a no-bond warrant for defendant's arrest. The matter was continued for sentencing to October 22, 2015. On September 9, 2015, defense counsel filed a motion for a new trial.

¶ 12    On September 16, 2015, the trial court ordered the clerk to send notice by certified mail to defendant, at his last known address, that an October 22, 2015, court date had been set for a hearing

on defendant's posttrial motion and for sentencing. The clerk did so, and the notice was returned marked "Return to Sender" and "Unable to Forward."

¶ 13    Defendant did not appear on October 22, 2015. After hearing and denying defendant's motion for a new trial, the court said:

> "Now moving forward to the sentencing—and also for the record, the record should reflect that the [d]efendant was willfully absent at the time that the trial took place, the [d]efendant was not present at the time sentencing was set. An order was entered indicating that the clerk should send notice to his last known address about the sentencing date on today's date. There is that attachment that's in the file. It was filed September 30th, indicating that the clerk sent notice to him at the last known address, that it was returned to sender, with an unable to forward.
>
> So the clerk has attempted to follow the Court's order and to notify him of today's sentencing date, but based upon the failure of the [d]efendant to appear on the last court date and his failure to provide the Court with a good address, we were unable to notify him of today's sentencing date."

¶ 14    Following argument, the trial court sentenced defendant to the following prison terms, to be served concurrently: 15 years on count II (armed violence), 10 years on count IV (armed violence), 5 years on count V (aggravated DUI), and 1 year each on counts XIII and XIV (possession of fraudulent identification). (The court merged counts VI and VII into count V for sentencing and did not impose sentence on those counts.) Defense counsel asked that defendant's bond money be "refunded to Counsel for fees to do this and the appeal." The court ordered that the remaining bond money be returned to defense counsel after satisfaction of all fines, costs, and fees.

¶ 15    Thereafter, on November 19, 2015, defense counsel filed a timely notice of appeal. On December 29, 2015, we dismissed the appeal for failure to comply with our order of December 14, 2015. (Our December 14, 2015, order was a warning letter indicating that a docketing statement was due by December 21, 2015).

¶ 16    On July 23, 2019, defendant was arrested on the warrant. The next day, he appeared in court, with an interpreter present via telephone. The trial court reimposed the October 2015 sentence and ordered defendant to the Department of Corrections.

¶ 17    On August 22, 2019, defendant filed a timely notice of appeal from the July 24, 2019, order. He later moved to dismiss the appeal. On October 2, 2019, we granted defendant's motion and dismissed his appeal.

¶ 18    On November 4, 2019, defendant filed a *pro se* petition for relief under the Act (725 ILCS 5/122-1 *et seq.* (West 2018)). On January 8, 2020, the trial court found that the petition presented the gist of a constitutional claim and docketed the petition for further consideration. Further, the court ordered that the public defender's office be appointed to represent defendant.

¶ 19    On May 20, 2021, defendant, through appointed counsel, filed an amended postconviction petition.

¶ 20    On December 8, 2021, the State filed a motion to dismiss the amended petition. The State argued that the petition was time-barred because it was due on August 2, 2016, but not filed until November 4, 2019. In addition, the State argued that the petition was meritless.

¶ 21    On July 29, 2022, defendant filed a "First Amendment" to his amended postconviction petition. The "First Amendment" was essentially a response to the State's motion to dismiss and contained no substantive claims. Defendant addressed the timeliness issue. He argued that his petition was timely filed following our October 2, 2019, order, which granted defendant's motion

to dismiss his appeal. He further argued that, if the petition was untimely, he lacked culpable negligence as to the late filing because defense counsel never informed him of the guilty verdicts and sentence. In support, defendant pointed to his June 30, 2022, affidavit, which averred, in its entirety, the following:

"When I arrived in court house [*sic*] on my trial I meet my attorney *** who has been leaving the courthouse. He advised me to leave or I would be arrested.

He never sent me an[y]thing in the mail letting me know that I had been found guilty and sentencing to prison;

He never called me, or left me a message what was going on with my case, and he never returned my calls.

That I only learned that I had been convicted and sentenced after I were arrested and sent to prison."

¶ 22    On August 29, 2022, the State filed a motion to dismiss defendant's "First Amendment" to the amended petition. The State incorporated by reference its previous arguments, maintained that the deadline for filing the petition was August 2, 2016, and argued that defendant's affidavit did not show a lack of culpable negligence.

¶ 23    A hearing took place on January 19, 2023. The State addressed the timeliness of defendant's petition, defendant's failure to show a lack of culpable negligence, and the substantive merits of the petition's claims. In response, defendant conceded that the petition was not timely filed but argued that the delay was not due to his culpable negligence in that defense counsel failed to fulfill his duty to keep him informed about the case. He argued that his claims were not forfeited or barred, because defense counsel took money to handle his appeal but did nothing. Defendant also addressed the substantive merits of the petition's claims.

¶ 24 The trial court dismissed defendant's postconviction petition. The court found that defendant's notice of appeal was timely filed on November 19, 2015, and that, therefore, the deadline for filing the postconviction petition was August 2, 2016. Because defendant did not file his petition until November 4, 2019, it was untimely. The court reviewed defendant's affidavit "to determine if it contain[ed] sufficient well-pleaded facts to show that [defendant] was not culpably negligent in the late filing of [his] *pro se* petition." The court concluded that the affidavit was not sufficient.

¶ 25 This timely appeal followed.

¶ 26                                       II. ANALYSIS

¶ 27 On appeal, defendant contends that the trial court should not have dismissed his postconviction petition based on timeliness, because he alleged facts supporting a lack of culpable negligence for the late filing and, thus, the court was required to hold an evidentiary hearing on the issue. We disagree.

¶ 28 "The Act provides a remedy for defendants who have suffered substantial violations of their constitutional rights." *People v. Ramirez*, 361 Ill. App. 3d 450, 451 (2005). "Under the Act, a postconviction proceeding *** contains three stages." *Id.* "At the first stage, the [trial] court must independently review the postconviction petition within 90 days of its filing and determine whether the petition should be dismissed because it is frivolous or is patently without merit." *Id.* "To survive the first stage, a petition must state only the gist of a constitutional claim." *Id.* "A petition also survives the first stage if the trial court fails to make a finding that it is frivolous or without merit within 90 days ***." *Id.* at 451-52. Further, a court may not consider the timeliness of a postconviction petition at the first stage. *People v. Perkins*, 229 Ill. 2d 34, 48 (2007).

¶ 29 "If the petition survives the first stage, the defendant moves on to the second stage under the Act, at which point an indigent defendant is appointed counsel." *Ramirez*, 361 Ill. App. 3d at 452. "At the second stage, the defendant's counsel may file an amended postconviction petition and the State may file a motion to dismiss or an answer to the petition." *Id.* The timeliness of the petition may be considered at the second stage. *Perkins*, 229 Ill. 2d at 48. "If the trial court does not dismiss or deny the petition, the proceeding advances to the third and final stage, at which the trial court conducts an evidentiary hearing on the defendant's petition." *Ramirez*, 361 Ill. App. 3d at 452.

¶ 30 The trial court dismissed defendant's petition at the second stage, finding that the petition was untimely. When defendant filed his petition on November 4, 2019, section 122-1(c) of the Act (725 ILCS 5/122-1(c) (West 2018)) provided:

> "[N]o proceedings under this Article shall be commenced more than 6 months after the conclusion of proceedings in the United States Supreme Court, unless the [defendant] alleges facts showing that the delay was not due to his or her culpable negligence. If a petition for certiorari is not filed, no proceedings under this Article shall be commenced more than 6 months from the date for filing a certiorari petition, unless the [defendant] alleges facts showing that the delay was not due to his or her culpable negligence.
>
> *** If a defendant does not file a direct appeal, the post-conviction petition shall be filed no later than 3 years from the date of conviction, unless the [defendant] alleges facts showing that the delay was not due to his or her culpable negligence.
>
> This limitation[s period] does not apply to a petition advancing a claim of actual innocence."

Defendant does not assert a claim of actual innocence. Thus, the limitations period set forth above applies.

¶ 31　　Here, when defendant filed his notice of appeal on November 19, 2015, he "file[d] a direct appeal" for purposes of ascertaining the appropriate deadline for filing a postconviction petition. See *People v. Lighthart*, 2023 IL 128398, ¶¶ 67 ("a petitioner is to be found to have 'filed a direct appeal' if he or she files a notice of appeal that culminates in an appellate order disposing of the appeal, whether by dismissal or on the merits"). Thus, when we dismissed defendant's appeal on December 29, 2015, defendant had until February 2, 2016—35 days after December 29, 2015—to file a petition for leave to appeal in the Illinois Supreme Court (see Ill. S. Ct. R. 315(b) (eff. Jan. 1, 2015)), and his postconviction petition was due on August 2, 2016—six months later.[2] See *People v. Johnson*, 2017 IL 120310, ¶ 24 ("[T]he six-month time period for filing a postconviction petition started to run after the expiration of the 35 days in which defendant had to file a petition for leave to appeal to [our supreme] court."). Thus, defendant's petition, filed over three years late, was untimely. Notably, the parties agree that defendant's petition was untimely and that the delay in filing the petition may be excused only if it was not due to defendant's culpable negligence.

---

[2]We recognize that, in the "First Amendment" to his amended petition, defendant argued that his petition was timely because our October 2019 order dismissing his August 2019 notice of appeal was the proper basis for computing the deadline for his petition. However, at the hearing on the State's motion to dismiss, defendant conceded that his petition was untimely (thus, presumably, accepting the State's position that the deadline should be computed by reference to our December 2015 dismissal). Likewise, in this appeal, defendant does not dispute the trial court's untimeliness finding but focuses solely on the issue of culpable negligence.

However, the parties disagree about whether defendant has alleged a lack of culpable negligence sufficient to excuse the late filing.

¶ 32     Defendant contends that he alleged facts showing that the delay in filing was "due to [trial] counsel's failure to effectuate [defendant's] appeal, as well as counsel's failure to inform [him] about the continuing status of his case." He argues that the trial court improperly made a credibility determination when it dismissed the petition. The State responds that defendant was not entitled to a hearing on the culpable negligence issue because "defendant left many of his own actions or inactions that effected his knowledge of the proceedings unexplained."

¶ 33     "Lack of culpable negligence is very difficult to establish." *People v. Gunartt*, 327 Ill. App. 3d 550, 552 (2002). "A defendant bears a heavy burden to affirmatively show why the exception to the statute of limitations applies to his case." *Id.*

> "[The defendant] cannot merely make vague or conclusory assertions, but must show clearly through factual allegations that he previously made diligent attempts to uncover matters he now purports entitle him to judicial relief or otherwise demonstrate in significant detail how he could not have obtained such information before the limitations period expired. [Citation.]" (Internal quotation marks omitted.) *Id.*

We review *de novo* whether a defendant who invokes the culpable negligence exception is entitled to an evidentiary hearing on the issue. *People v. Jones*, 2021 IL 126432, ¶ 14 (pure question of law reviewed *de novo*); see also *People v. Childress*, 191 Ill. 2d 168, 174 (2000) (trial court's dismissal of postconviction petition without an evidentiary hearing is reviewed *de novo*).

¶ 34     Defendant, relying on *People v. Marino*, 397 Ill. App. 3d 1030 (2010), argues that he is entitled to a third-stage evidentiary hearing. In *Marino*, the defendant entered a blind plea of guilty to two counts of armed robbery. *Id.* at 1031. The factual basis for the two convictions was that the

defendant took money from two bank tellers. *Id.* Four years after his convictions and sentence were affirmed on direct appeal, the defendant petitioned for postconviction relief. *Id.* He argued that his trial attorney was ineffective by allowing him to plead guilty to, and be sentenced for, two counts of armed robbery when he had taken money from only one teller. *Id.* The defendant asserted that, while pursuing a mandamus action, he became aware of counsel's ineffectiveness and promptly filed a postconviction petition. *Id.* The State moved to dismiss the petition as untimely, and the trial court granted that motion, finding that the discovery rule did not apply to postconviction petitions. *Id.* at 1032. Thus, it determined that, regardless of when and how the defendant discovered that his constitutional rights were violated, the defendant's petition had to be dismissed as untimely. *Id.*

¶ 35    On appeal, we determined that the trial court erred when it found that the defendant's excuse for the late filing of his petition was immaterial. *Id.* at 1037. Because the defendant had alleged facts supporting his contention that the late filing (1) was not due to his culpable negligence and (2) should have been excused, we concluded that the trial court should have considered those reasons before dismissing the defendant's petition. *Id.* at 1036 ("[T]he inquiry is whether the defendant was culpably negligent based on the circumstances surrounding the discovery of the claim and the actions taken to preserve it."). Because the trial court did not consider the reasons for the delay, and the reasons were sufficiently alleged, we determined that the defendant was entitled to an evidentiary hearing. *Id.* ("[The defendant] should not have been precluded from presenting evidence that he lacked culpable negligence and that the matter is best determined at the third stage of the proceedings.").

¶ 36    Defendant's attempts to analogize his situation to that of the defendant in *Marino* fail. Here, unlike in *Marino*, defendant's delay had nothing to do with discovering a constitutional violation

long after conviction and sentence. Nevertheless, defendant argues that, like the defendant in *Marino*, his failure to timely file the petition was because he did not know that we had dismissed his appeal, and he attributes his ignorance to defense counsel's "fail[ure] to keep him informed regarding the status of the appeal." He argues that, because the facts are unrebutted, they must be taken as true.

¶ 37     However, as the State notes, defendant did not address his own actions or inactions that contributed *throughout* the proceedings to his lack of knowledge. We agree with the State that defendant's petition wrongly attempts to foist the blame for his ignorance of the proceedings squarely on counsel. Even assuming the truth of the allegations in the supporting affidavit, defendant did not allege facts showing that the untimely filing was not due to his own culpable negligence. This is not a matter of credibility.

¶ 38     First, the record clearly indicates that defendant was present in court, with an interpreter, on April 30, 2015, when the trial court set the following dates related to his case: June 12, 2015, at 9 a.m., for status; August 6, 2015, at 1:30 p.m., for final jury trial conference; and August 10, 2015, at 8:30 a.m., for jury trial. Defendant does not allege that he was unaware of those upcoming proceedings due to any action or inaction by counsel. Defendant provided no explanation for his absence in court on June 12, 2015, or August 6, 2015. To be sure, defendant seemingly attempted to explain his absence at the August 10, 2015, trial. Defendant claimed in his affidavit that "[w]hen [he] arrived in court house [*sic*] on [his] trial [he] [met] [defense counsel] who [was] leaving the courthouse" and "[defense counsel] advised [him] to leave or [he] would be arrested." We note, however, that this allegation includes no date or time. If we assume that this interaction with counsel occurred on the day of trial, then we infer that the earliest it could have happened was after the trial began, given defense counsel's pretrial representation that he had had no contact with

defendant. But we can be more precise: the interaction occurred after the trial had concluded, given defendant's report that counsel was "leaving the courthouse" and said that defendant should leave too or he "would be arrested." In any event, under either interpretation, defendant provided no explanation for why, given his knowledge of the trial date, he was not timely present in court for trial.

¶ 39    Moreover, defendant provided no explanation for his failure to keep the circuit court clerk informed of his correct address, which directly resulted in his failure to receive notice of the sentencing date. Defendant did allege that defense counsel failed to inform him that he had been found guilty and sentenced. He further alleged that counsel "never sent [him] an[y]thing in the mail," "never called [him]," and "never returned [his] calls." Defendant claimed that he "only learned that [he] had been convicted and sentenced" when he was arrested. However, even assuming the truth of defendant's allegations, the record indicates that defendant failed to keep the circuit clerk informed of his address as required by the conditions of his bail bond. The record includes the trial court's September 16, 2015, order directing the clerk to send notice, by certified mail, to defendant at his last known address, that an October 22, 2015, court date was set for a hearing on defendant's posttrial motion and for sentencing. The clerk did so, and the mail was returned marked "Return to Sender" and "Unable to Forward." At the sentencing hearing, the trial court noted "that the clerk sent notice [of the sentencing hearing] to [defendant] at the last known address, that it was returned to sender, with an unable to forward." The court stated that, "based upon *** [d]efendant['s] *** failure to provide the Court with a good address, we were unable to notify him of today's sentencing date." Defendant made no sufficient allegation that his failure to receive notice was not the result of his own culpable negligence.

¶ 40　　Defendant also claims for the first time on appeal that "[a]n evidentiary hearing was necessary to determine how [defendant's] language difficulties and his attorney's lack of communication, may have prevented him from filing his claim in a timely manner." However, defendant's petition made no such claim regarding his "language difficulties," and thus he has forfeited it. See *People v. Petrenko*, 237 Ill. 2d 490, 502-03 (2010). In any event, defendant has failed to specify on appeal how his language difficulties prevented him from filing his petition in a timely manner.

¶ 41　　Given the above, we hold that the postconviction petition's allegations are insufficient to establish defendant's lack of culpable negligence for untimely filing the petition and that, thus, the trial court properly dismissed the petition.

¶ 42　　　　　　　　　　　　　　III. CONCLUSION

¶ 43　　For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 44　　Affirmed.

*People v. Kirilyuk*, 2024 IL App (2d) 230154

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 14-CF-1112; the Hon. Salvatore LoPiccolo Jr., Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Christopher McCoy, and R. Christopher White, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | Jamie L. Mosser, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and Victoria E. Jozef, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |